UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil No. 19-cv-800 (TSC) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

Plaintiff Judicial Watch, Inc. sued Defendant U.S. Department of Justice (DOJ) seeking to compel disclosure of records responsive to its Freedom of Information Act (FOIA) request. Both parties have filed motions for summary judgment. (ECF Nos. 27 & 29.) Judicial Watch challenges only DOJ's invocation of Exemption 5, arguing that it has not met its burden under the FOIA Improvement Act of 2016. (ECF No. 29-1, Pl. Br.) For the reasons set forth below, the court will DENY both motions.

## I.  BACKGROUND

In July 2015, the FBI began investigating former Secretary of State Hillary Clinton's alleged use of unclassified private email servers. (ECF No. 27-2, Hardy Decl. ¶ 5.) A year later, then FBI Director James Comey publicly announced that the FBI would close the investigation, which it did the next day. (*Id.*) Following this announcement, attorneys in the FBI's Office of General Counsel prepared two sets of talking points for FBI managers to use in intra-agency briefings on the investigation: one for the Executive Assistant Directors (EADs), and one for the

Supervisory Agents in Charge (SACs).  (*Id.* ¶ 6.)  FBI officials also drafted FAQs and proposed answers.  (*Id.*)

In 2018, Plaintiff submitted a three-part FOIA request to the FBI, seeking:

- All final and draft copies of talking points prepared by the FBI for its EADs relating to the "Mid-Year Exam" investigation (MYE Talking Points) following the July 5, 2016 James Comey press conference in which he indicated that he would not recommend prosecuting Hillary Clinton;

- All final and draft copies of a one-page version of the aforementioned MYE Talking Points created for FBI SACs;

- All final and draft copies of charts of "statutory violations considered during the investigation [of Hillary Clinton's server], and the reasons for the recommendation not to prosecute . . ."

(*Id.* ¶ 7.)  Having received no documents in response to these requests, Plaintiff filed this lawsuit to compel disclosure of responsive records.

In September 2019, the FBI produced final copies of the SACs' talking points and notified Judicial Watch that final copies of the EADs' talking points had already been released in separate litigation by Judicial Watch.  (*Id.* ¶ 9.)  The FBI also withheld in full 70 pages of draft EADs and SACs talking points pursuant to FOIA Exemptions 5, 6, 7(C), and 7(E).  (*Id.* ¶ 10.)  It withheld 47 pages of those drafts exclusively under Exemption 5, which Plaintiff challenges on the grounds that DOJ has failed to meet its burden under the FOIA Improvement Act of 2016.  (*Id.* ¶¶ 6, 10.)

## II.   LEGAL STANDARD

"FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies."  *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).  The Act requires federal agencies to comply with requests to make their records

available to the public, unless such "information is exempted under [one of nine] clearly delineated statutory [exemptions]." *Id.* (internal quotation marks omitted). *See also* 5 U.S.C. §§ 552(a)–(b). "The agency bears the burden of justifying the application of any exemptions, 'which are exclusive and must be narrowly construed.'" *Ctr. for Investigative Reporting v. U.S Dep't of the Interior*, No. 18-cv-1599, 2020 WL 1695175, at * 3 (Apr. 7, 2020) (quoting *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015)). "FOIA cases typically and appropriately are decided on motions for summary judgment." *Georgacarakos v. FBI*, 908 F. Supp. 2d 176, 180 (D.D.C. 2012) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).

Summary judgment in FOIA cases may be based solely on information provided in an agency's supporting affidavits or declarations if they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted). These declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotation and citation omitted).

"To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)) (quotation marks omitted). By corollary, "[a] non-moving party's complete failure to come forward with evidence to demonstrate the existence of a genuine issue of material fact constitutes a 'reason' for the grant of summary judgment under [Rule 56(e)]." *Smith v. U.S. Dep't of Justice*, 987 F. Supp. 2d 43, 47 (D.D.C. 2013). Summary judgment is

proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Courts must view "the evidence in the light most favorable to the non-movant," "draw[] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor. *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

### III.     ANALYSIS

#### A. Exemption 5

DOJ withheld documents under Exemption 5, claiming protection under the deliberative process privilege.[1] Exemption 5 shields documents that would "normally [be] privileged from discovery in civil litigation against the agency," such as documents protected by the attorney-client, work-product, and deliberative process privileges. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To withhold a document under Exemption 5, an agency must show that "the disclosures of information withheld . . . would harm the agency's deliberative process." *Judicial Watch v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 97 (D.D.C. 2019) (*Judicial Watch I*) (citing 5 U.S.C. § 552(a)(8)(A)); *see also Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 100 (D.D.C. 2019). Judicial Watch does not contest that the deliberative process privilege protects the documents; instead, it argues that DOJ has not shown that releasing the documents would harm the agency's deliberative process. (Pl. Br. at 3–8.)

---

[1] Initially, DOJ also claimed some of the documents could be withheld under Exemption 5 as attorney-work product. (ECF No. 27, Def. Br. at 8–9.) It later withdrew this claim. (ECF No. 31, Def. Reply at 3.)

1. Burden to Establish Harm

The FOIA Improvement Act of 2016 (the Act), enacted in response to concerns about FOIA's efficacy, defines agencies' burden to establish harms flowing from disclosure. Pub. L. No. 114-185 (2016). The Act codified an existing DOJ policy, *see Judicial Watch I*, 375 F. Supp. 3d at 97, permitting federal agencies to withhold information under a FOIA exemption only if (1) they could "reasonably foresee[] that disclosure would harm an interest protected by an exemption," or (2) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i)(I)–(II). DOJ contends that because the Act codified existing agency policy, its burden under the Act has not changed. (Def. Reply at 6–8.) The court agrees with Judicial Watch that the Act "provides a meaningful and heightened standard." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-cv-0832, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019) (*Judicial Watch II*).

To meet its burden under the Act, an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials." *Id.*; *see also Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (noting government showed that it "reasonably foresaw that disclosure would harm an interest protected by the deliberative-process privilege.") "The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld." *Judicial Watch I*, 375 F. Supp. 3d at 101. It is not enough for an agency to speculate that harm could result from disclosure. *Id.* It must "connect[] the harms" in a "meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Judicial Watch II*, 2019 WL 4644029, at *5; *see also Rosenberg v. U.S.*

5

*Dep't of Def.*, 442 F. Supp. 3d 250, 259 (D.D.C. 2020).  In doing so, an agency must avoid the use of "nearly identical boilerplate statements" and "generic and nebulous articulations of harm." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106 (quoting *Judicial Watch II*, 2019 WL 4644029, at *4–5).

    2. DOJ's Claimed Harms

DOJ argues that disclosure of the drafts would harm two interests protected by the deliberative process privilege: (1) avoiding public confusion, and (2) ensuring that agency employees are able to engage in full and frank discussion.[2]  (Hardy Decl. ¶¶ 9–10, 20.)

    a. *Public Confusion*

DOJ has failed to provide more than speculation that disclosure of the drafts would cause public confusion.  *See Judicial Watch I*, 375 F. Supp. 3d at 101.  It contends that because the drafts differ substantively from their final versions, they might be mistaken for final agency policy if released.  (Hardy Decl. ¶¶ 18, 20.)  DOJ admits that many of the drafts contain edits, comments, and recommendations that track these changes (*e.g.*, Bates Nos. 27–31).  (ECF No. 27-2 at Ex. G, Revised *Vaughn* Index.)  Indeed, as the revised *Vaughn* index descriptions indicate, all but five of the withheld pages at issue contain comments, edits, recommendations, or some combination of the three.  (*See id.*)  Because these documents have at least some markings that indicate they are drafts, it is unlikely that they would be mistaken for final agency policy.

---

[2] While the parties appear to disagree on the scope of the harms protected by the deliberative process privilege, they agree that it includes those currently invoked by DOJ and articulated in *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980): 1) preserving frank discussions between government officials, 2) preventing premature disclosure of proposed policies, and 3) avoiding public confusion from releasing inaccurate information. (Def. Reply at 9; ECF No. 33, Pl. Reply at 6.)  *See also Machado Amadis*, 971 F.3d at 371 (noting the deliberative process privilege "protects 'debate and candid consideration of alternatives within an agency,' thus improving agency decisionmaking." (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772 (D.C. Cir. 1978))).

DOJ further contends that disclosing drafts that may contain factually inaccurate information would cause public confusion. (ECF No. 31-1, Seidel Decl. ¶ 8.) However, DOJ admits that it has not fully vetted these drafts for factual accuracy. (*Id.*) Until it has done so, and can assert to this court that the documents do, in fact, contain inaccurate information, DOJ's assertions are merely speculative.

Moreover, the boilerplate statements in DOJ's affidavits and revised *Vaughn* index do not support DOJ's argument that public confusion is indeed "reasonably foreseeable," and not merely speculative. *See, e.g.*, *Rosenberg*, 442 F. Supp. 3d at 259 (finding greater specificity needed to meet heightened burden).

       b.  *Discouraging Frank Dialogue*

DOJ likewise fails to meaningfully connect the harm of discouraging frank dialogue to the information withheld, relying on boilerplate statements to justify its withholdings. *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 106. For example, DOJ declares that "[t]he harm here would be a chilling effect on agency employees' willingness to share such drafts if they knew their unrefined ideas would be subject to public disclosure," (Hardy Decl. ¶ 20), but fails to draw a link between the stated harm and the specific drafts withheld. It does not "provid[e] context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Judicial Watch II*, 2019 WL 4644029, at *5. And while DOJ's second declaration provides a more detailed account, its assertion that releasing the drafts "would harm the ability of attorneys and additional staff members within the FBI to be completely candid with FBI senior executives in expressing their views with which the executives may subsequently disagree," (Seidel Decl. ¶ 9), falls short of meaningfully connecting

7

the harm to the specific information withheld.  DOJ's revised *Vaughn* index descriptions are equally nebulous:

> The release of the material would have the foreseeable harm of discouraging frank and open dialogue among FBI staff deliberating over information being prepared for FBI executives' consideration.  If FBI staff believed that their preliminary comments and edits would be released to the public[,] it is foreseeable that agency staff would refrain from making edits or comments.  Thus, senior FBI leadership would be less likely to gain the full and necessary understanding of the important issues that serve as a basis for agency decision-making.

(ECF No. 31-1 at Ex. A, 10–19.)

In *Natural Resources Defense Council v. U.S. Environmental Protection Agency*, the court found that the EPA's supplemental affidavit "adequately articulated 'the link between [the] harm and the specific information contained in the material withheld,'" despite containing some boilerplate language.  No. 17-cv-5928, 2019 WL 4142725, at *5 (S.D.N.Y. 2017) (quoting *Judicial Watch I*, 375 F. Supp. 3d at 101).  In that case, however, the EPA provided "substantially more context for the decisionmaking processes in question and the harms that would reasonably ensue from disclosure of the material."  *Nat. Resources Def. Council*, 2019 WL 4142725, at *5 ("EPA explains in some detail how disclosure of records relating to the Section 6(a) rulemakings, the pesticide registration reviews, the Chemical Data Reporting rules, and the evaluation of existing regulations could prematurely disclose agency rulemakings or policies that have not been finalized.").  DOJ has not provided the kind of link between the alleged harm and the information in the withheld material that the court found in *Natural Resources Defense Council*.  Accordingly, DOJ has failed to show that it could "reasonably foresee" that harm would result from disclosure.

Consequently, the court will deny summary judgment for DOJ regarding Exemption 5. The court will, however, permit DOJ to supplement the record regarding foreseeable harm. Thus, the court will also deny summary judgment for Judicial Watch.

## B. **Appropriateness of *In Camera* Review**

Judicial Watch asks the court to consider conducting *in camera* review to determine whether DOJ's assertion of Exemption 5 is proper. (Pl. Br. at 12.) FOIA authorizes courts to examine *in camera* agency records withheld under any of the nine FOIA exemptions. 5 U.S.C. § 552(a)(4)(B). *In camera* review is a discretionary tool. *Juarez v. U.S. Dep't of Justice*, 518 F.3d 54, 59–60 (D.C. Cir. 2008) ("It is true that FOIA provides district courts the option to conduct *in camera* review, but it by no means compels the exercise of that option.") (internal citation omitted). Both Congress and the courts have made clear that while *in camera* review is not required, it may be necessary to carry out the court's "statutory obligation to conduct a meaningful *de novo* review." *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980).

Because *in camera* review is "necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure," the court should use it sparingly. *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973). It is not a substitute for an agency's production of affidavits and *Vaughn* indices. *See, e.g., Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157, 175 (D.D.C. 2011) (rejecting *in camera* review and directing the agency to revise their *Vaugh* submissions). "If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a *de novo* determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery." *Spirko v. USPS*, 147 F.3d 992, 997 (D.C. Cir. 1998). However, "the best approach is to direct

9

the agency to revise their *Vaughn* submissions, taking into account the deficiencies identified by the Court." *Elec. Frontier Found.*, 826 F. Supp. 2d at 175.

Judicial Watch contends that the insufficiency of DOJ's affidavits, the limited number of pages at issue, and the strong public interest in disclosure tilt the balance in favor of *in camera* review. (Pl. Br. at 12–13.) At this juncture, the court disagrees. While DOJ's declarations and *Vaughn* indices are currently insufficient to justify withholding documents under Exemption 5, it should be given the opportunity to provide additional detail, taking into the account the deficiencies identified in this opinion. *See Elec. Frontier Found.*, 826 F. Supp. 2d at 175. This is not a case where it is "impossible" for DOJ to provide "sufficiently detailed justifications." *Allen*, 636 F.2d at 1298. Therefore, the court will permit DOJ to supplement the record with detailed factual support for its claim that disclosure of these drafts would harm the agency's deliberative process.

### IV.   CONCLUSION

For the reasons stated above, the court will DENY DOJ's motion for summary judgment and will DENY Judicial Watch's cross-motion for summary judgment. A corresponding Order will issue separately.

Date:  September 29, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge