## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 19-800 (TSC) |
|  | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
|  | ) |
| Defendant. | ) |

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On September 29, 2020, this Court denied the Parties' respective motions for summary judgment in the instant FOIA matter, which has ultimately centered on the request for release of draft talking points and FAQs relative to FBI Director Comey's public statements about the investigation of Secretary Clinton's use of a personal email server during her time as Secretary of State. Iterative drafts of the final talking points and FAQs released to Plaintiff in earlier litigation, the records were designed for internal FBI audiences: one set for Executive Assistant Directors and one set for Supervisory Agents in Charge. Deemed to be covered by the deliberative process privilege, the drafts were withheld pursuant to FOIA Exemption 5.

After full briefing of the Parties' cross motions for summary judgment, the Court ruled that declarations and *Vaughn* indices submitted by Defendant Department of Justice ("DOJ") were "insufficient to justify withholding documents under Exemption 5," for failure to provide sufficiently concrete claims of harm to cognizable interests. Memorandum Opinion (ECF No. 37) at 7-9. Specifically, the Court regarded DOJ's claimed justifications for withholding the

iterative drafts – to avert public confusion and chilling frank dialog – as speculative. Believing, however, that "sufficiently detailed justifications" might be within reach, the Court permitted DOJ an opportunity "to supplement the record with detailed factual support for its claims that disclosure of these drafts would harm the agency's deliberative process." *Id.* at 10.

In accepting the Court's invitation, DOJ is mindful of its nature and scope; therefore, the Supplemental Memorandum is, in large measure, a frame for the Second Declaration of Michael Seidel, which represents the "detailed factual support" for which the Court has called. Because, in the interim, however, the Circuit Court of Appeals has had occasion to address the impact of the FOIA Improvement Act's ("FIA of 2016") enactment on the nature of the government's burden and the form necessary to satisfy that burden, the Supplemental Memorandum includes a brief account of *Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020), as well as decisions from Judges Sullivan, Kollar-Kotelly, and Mehta finding the government's burdens met in three cases since *Amadis*.

In *Amadis*, the D.C. Circuit held that "[a]n agency must show both that the [withheld] record falls within a FOIA exemption and that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption." 971 F.3d at 370. There, the agency cleared both hurdles. First, the plaintiff in *Amadis* contested the exempt status of the so-called Blitz forms by which junior staff spotted, analyzed, and made recommendations about issues to their superiors. *Id.* Plaintiff argued that the Blitz forms were effectively final decisions because reviewer fields remained blank – a contention the Circuit rejected because a "recommendation does not lose is predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment." *Id.* In short, the agency did not have to prove a negative.

In this case, it is undisputed that the draft talking points and FAQs fall within a FOIA exemption.  Indeed, unlike *Amadis*, Judicial Watch concedes that the documents withhold are covered by the deliberative process privilege of Exemption 5.  See Memorandum Opinion (ECF No. 37) at 4.  This leaves only foreseeability of harm.

In *Amadis*, the agency "reasonably foresaw that disclosure would harm an interest protected by the deliberative-process privilege." *Id.* at 371.  The interest harmed was the interest in the frank and forthright discussions necessary for efficient and superior agency decisionmaking.  The same is true here.  While the FIA of 2016 increased the level of granularity needed to show harm, it did not eviscerate decades of Supreme Court and Circuit precedent concerning the interests at stake and protected by the deliberative process privilege, [1] despite Judicial Watch's persistent attempt to suggest otherwise here and in several other cases.

While Plaintiff is free to argue about the sufficiency of the proof of harm, it is not free to contend that the fear of public scrutiny no longer counts or that public servants ought to stop fearing scrutiny.  See, *e.g.*, Plaintiff's Brief in Support of Summary Judgment (ECF No. 29) at 6 ("It seems equally possible that agency officials would welcome public disclosure of their opinions as a way of vindicating how thoroughgoing and careful the officials were in their deliberations and knowing their opinions would eventually been made public would increase everyone's honesty.").  On the contrary, the deliberate process privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism."

---

[1] See *Jordan v. DOJ*, 591 F.2d 753, 772 (D.C. Cir. 1978) (*en banc*)( privilege protects "debate and candid consideration of alternatives within an agency," thus improving agency decisionmaking.); *NRLB v. Sears, Roebuck & Co*., 421 U.S. 132, 150-51 (1975)("experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances ... to the detriment of the decisionmaking process."); *Dep't of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001) (deliberative-process privilege ""rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery").

*Coastal State Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D,C, Cir 1980).  Therefore, it is also undisputed that the general purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions." See, *e.g., Sears, Roebuck & Co.*, 421 U.S. at 151.  Though not necessarily an exclusive list, three distinct and indisputable purposes have consistently been cited for the privilege:  (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are actually adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not, in fact, ultimately grounds for an agency's action.  See, *e.g., Coastal State*, 617 F.2d at 866.

The Circuit reasoned in *Amadis* that the agency's affidavit "adequately explained that full disclosure of the Blitz forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing "the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." 971 F.3d at 371. Recognizing the FIA of 2016 did not degrade the interests in support of the privilege, the Court had little difficulty crediting the affiant's account of harm:  "Such chilling of candid advice is exactly what the privilege seeks to prevent." *Id.*

The same is true here, as Mr. Seidel explains in detail.  See Second Seidel Declaration at ¶¶ 9-11.  He explained that those who participated in the drafting, commenting and editing of the talking points "would be reluctant to be fully candid for fear of attention being directed toward them personally and this would decline to weigh in on an important agency matter of such significance and scrutiny and there would have been direct harm to the analysis of the talking points." *Id. ¶*10.  He further averred that "these drafters would not comment or add valuable

information in an important case if those back and forth raw comments were subsequently released to the public." *Id.*

Seidel also does well to invoke recent history: "In recent years, FBI employees involved in high-profile investigations, including the Midyear Exam investigation, have themselves become subject to intense scrutiny and public attention; their work and actions dissected, intensely scrutinized, and judged; and they themselves attacked publicly on social media and even threatened." *Id.* ¶11. Not only are these the kinds of matters in which the need for complete candor and a willing to challenge the status quo and think outside the box matters most, but they are simultaneously the ones where the risk of a repeat of recent history – brought about by exposing internal deliberations expected to be maintained in private – would surely chill employees unwilling to sustain similar blows.[2]

Since the Circuit's decision in *Amadis*, several district courts have resolved FOIA claims implicating the FIA's foreseeability of harm standard. In a decision before *Amadis*, Judge Sullivan denied the Commerce Department's motion for summary judgment, and held in abeyance Judicial Watch's cross motion, in order to give Commerce an opportunity to supplement its declaration in an effort to satisfy FIA's "foreseeable harm" standard. On supplemental briefing post-*Amadis*, however, Judge Sullivan granted summary judgment in Commerce's favor because the agency reasonably foresaw that specific harm(s) from the disclosure of withheld materials and because it could connect the harms in a meaningful way to the information withheld.

Similarly, Judge Kollar-Kotelly heard – and granted – a renewed summary judgment motion after *Amadis* in *Judicial Watch v. Dep't of Justice*, 2020 U.S. Dist. LEXIS 171731

---

[2] Mr. Seidel also explains that the creation of public confusion by disclosing serial drafts is a sufficiently cognizable harm to warrant withholding in its name. See Second Seidel Declaration ¶¶ 7-8.

(D.D.C. Sept., 18, 2020). Disclosure of the successive drafts would reveal the drafters' evolving thought processes regarding the Executive Order, as well as ideas and alternatives considered but ultimately rejected in the final agency decision. Moreover, the chilling effect was especially acute because of the case's unique sensitivity. The Court ultimately concluded that DOJ had sufficiently connected the disclosure of the withheld documents to a foreseeable harm, as is required, and was therefore had properly relied on a deliberative process privilege withholding under FOIA Exemption 5.

Finally, in *National Immigration Project v. ICE*, 2020 U.S. Dist. LEXIS 178774 (D.D.C. Sept. 29, 2020), Judge Mehta found the ICE met its burden under the FIA of 2016 with respect to withholding a draft ICE handbook pursuant to Exemption 5. ICE reasonably foresaw that thedisclosure of withheld portions of Draft Handbook would cause the chilling of agency deliberations. While Plaintiffs attempted to dismiss ICE's declaration as "mere boilerplate," the Court found that the declaration to be "at least as detailed as those" in *Amadis*. "Given the preliminary nature of the entire Draft Handbook, the chilling effect of public disclosure is in some sense self-evident, and it is difficult to see how ICE could have provided any additional explanation as to how disclosure of the draft will cause future agency communications to be chilled." *Id.* at *17.

Both *Amadis* and the district court decisions decided more recently – as well as Mr. Seidel's revised declaration – support the conclusion that withholding the draft talking points and FAQs in this case was proper. FBI described the specific harms to the deliberative process that would result from disclosure of the iterative drafts. The chilling effect in this case – even more acute than the chilling impact of disclosures of the iterative drafts of the Yates memo – is the quintessential harm that Exemption 5 is intended to protect against. *Amadis*, 971 F.3d at 371

("Such chilling of candid advice is exactly what the privilege seeks to prevent.") As such, the FBI has satisfied its burden under FIA of 2016.

Dated: January 5, 2020          Respectfully submitted,

                                    MICHAEL R. SHERWIN
                                    Acting United States Attorney

                                    BRIAN P. HUDAK
                                    Acting Chief, Civil Division

By: */s/ John Moustakas*
       John Moustakas, D.C. Bar #442076
       Assistant United States Attorney
       555 Fourth Street, N.W.
       Washington, D.C. 20530
       (202) 252-2518
       john.moustakas@usdoj.gov
       *Counsel for Defendant*