UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 19-800 (TSC) |

## MEMORANDUM OPINION

Plaintiff Judicial Watch, Inc. sued Defendant U.S. Department of Justice (DOJ) seeking to compel disclosure of records responsive to its Freedom of Information Act (FOIA) request. Plaintiff challenges Defendant's invocation of FOIA's Exemption 5, arguing that it has not met its burden under the FOIA Improvement Act of 2016 (FIA). For the second time, the parties have cross-moved for summary judgment. *See* ECF Nos. 45, 51. For the reasons set forth below, the court will GRANT Defendant's Motion for Summary Judgment and DENY Plaintiff's Motion for Summary Judgment.

### I.   BACKGROUND

The court has already set forth most of the relevant legal and factual background for this case. *See Jud. Watch, Inc. v. United States Dep't of Just.*, 2020 WL 5798442 (D.D.C. Sept. 29, 2020). In sum: Plaintiffs seek all final and draft copies of internal talking points prepared by the Federal Bureau of Investigation (FBI) for its Executive Assistant Directors (EADs) and Supervisory Agents in Charge (SACs) related to the FBI's investigation of former Secretary of State Hillary Clinton's alleged use of unclassified private email servers. Defendants withheld 70 responsive pages, and Plaintiff challenges the withholding of 47 of those pages.

In its prior decision, the court held that FOIA's Exemption 5—the deliberative process privilege—applied to the 47 pages at issue. *Id.* at *2. However, the court concluded that Defendant had failed to satisfy its "burden to establish harms flowing from disclosure." *Id.* at *4. First, Defendant "failed to provide more than speculation that disclosure of the drafts would cause public confusion. *Id.* at *3. Likewise, Defendant failed "to meaningfully connect the harm of discouraging frank dialogue to the information withheld, relying on boilerplate statements to justify its withholdings." *Id.* at *4. Its declarations did not "provid[e] context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Id.* (citing *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019)). Nonetheless, contemplating that Defendant might be able to meet its burden by providing additional information, the court permitted Defendant to "supplement the record" regarding the harms it predicts. *Id.* at 4–5.

Defendant has now filed an updated *Vaughn Index* and declaration in support of its renewed Motion for Summary Judgment. Supplemental Memorandum of Law in Support of Defendant's Motion for Summary Judgment, ECF No. 45 (Def.'s Supp. MSJ); Second Declaration of Michael Seidel, ECF No. 45-1 (Second Seidel Decl.). Plaintiff has cross-moved for summary judgment, ECF No. 51, filing a brief supporting its own motion and opposing Defendant's, ECF No. 50 (Pl.'s MSJ Memo).

## II.     LEGAL STANDARD

In FOIA litigation, as in all civil cases, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester. *Weisberg v.*

*U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). But unlike most other litigation, a defendant agency moving for summary judgment in a FOIA case bears the burden of proof—*not* the plaintiff challenging defendant's compliance with FOIA. 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"); *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Finally, agency decisions to "withhold or disclose information under FOIA are reviewed *de novo*" by the district court and are not subject to *Chevron* deference. *See Jud. Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004).

FOIA's Exemption 5 exempts from disclosure only those records that traditionally would be exempt from production in a civil discovery context. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). This includes the common law deliberative process privilege. *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The D.C. Circuit has emphasized, however, the "narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). The FIA became law on June 30, 2016 with bipartisan approval and a unanimous Senate vote. Pub. L. No. 114-185, 130 Stat. 538 (2016). It requires that an agency only withhold a record if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption." *Id*. at 5 U.S.C. § 552 (a)(8)(A)(i).[1] The FIA advances FOIA's "presumption of openness" by requiring that an agency "release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest and if its disclosure is not prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018).

---

[1] Agencies may also withhold records where disclosure is prohibited by law. *See* 5 U.S.C. § 552(a)(8)(A)(i).

### III.  ANALYSIS

Defendant's supplemental materials satisfy its burden to connect the disclosure of the 47 draft pages at issue with the harm of discouraging frank dialogue within the agency.  That is enough to justify withholding the documents under FOIA's Exemption 5.[2]  Accordingly, the court does not reach whether Defendant has satisfied its burden with respect to the harm of public confusion.

To meet its burden for withholding records under Exemption 5, an agency must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials." *Jud. Watch, Inc.*, 2019 WL 4644029, at *5. "The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019).  It is not enough for an agency to speculate that harm could result from disclosure.  *Id.*  It must "connect[] the harms" in a "meaningful way to the information withheld, such as by providing context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure."

---

[2] In the first summary-judgment briefing, Plaintiff "[did] not contest that the deliberative process privilege protects the documents"—a concession that the court's prior decision recognized, relied upon, and did not reopen for further litigation. 2020 WL 5798442 at *2.  Now, however, Plaintiff asserts for the first time that Exemption 5 does not apply here at all because "the withheld material reflects deliberations and debate over a final *document*, not a final agency *policy or decision*." Pl.'s MSJ Memo at 7.  Even if Plaintiff had not waived that argument, it would fail on its own terms.  "[T]he overwhelming consensus among judges in this District is that the privilege protects agency deliberations about public statements, including the use of talking points." *Am. Ctr. for L. & Just. v. Dep't of Just.*, 325 F. Supp. 3d 162, 171-72 (D.D.C. 2018) (citation omitted).  The records at issue here are no different; they were "drafted before and in preparation for communications" and "reflect the drafters' opinions and analyses on specific topics and focus on how to best . . . respond to questions." *Am. Ctr. for L. & Just. v. U.S. Dep't of Just.*, 334 F. Supp. 3d 13, 21 (D.D.C. 2018).

2019 WL 4644029, at *5; *see also Jud. Watch, Inc. v. U.S. Dep't of Just.*, 487 F. Supp. 3d 38, 47 (D.D.C. 2020), *rev'd and remanded on other grounds by Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49 (D.C. Cir. 2021) (concluding that DOJ sufficiently connected the disclosure of withheld documents to foreseeable harm where agency submitted a particularized affidavit linking disclosure to tangible chilling effect).

The D.C. Circuit's decision in *Machado Amadis v. United States Department of State,* 971 F.3d 364 (D.C. Cir. 2020), is illustrative. In that case, the agency sought to withhold certain portions of "Blitz Forms"—documents filled out by line attorneys "to identify issues presented in [a FOIA] appeal, to analyze those issues, and to make recommendations to senior attorneys," who in turn would finally adjudicate the appeal. *Id.* at 370. The agency explained that the portions withheld reflected "line attorneys' evaluations, recommendations, discussions, and analysis" as part of the process of preparing "senior-level review and decisionmaking." *Id.* As a result, the agency predicted, disclosure would "discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* at 371 (internal quotations and alterations omitted). The Circuit held that the agency had adequately explained how disclosure of "the information at issue . . . would chill future internal discussions." *Id.* (internal quotations omitted).

Defendant has met its burden here by articulating the connection between the information at issue—along with its place in the particular processes involved—and the chilling effect of disclosure.[3] Defendant's latest declaration specifically "identifies the content of the withheld

---

[3] In doing so, Defendant also provides the information necessary to confirm that the deliberative process privilege applies:

documents," *Jud. Watch, Inc.*, 487 F. Supp. 3d at 46: "redlines, comments, and suggestions" with "preliminary assessments and recommendations, including wording, structure, presentation, and potential impact to the anticipated audience," Second Seidel Decl. ¶ 9.  The discussion in those edits is "substantive," with "significant debate between the officials that drafted and reviewed it" as they attempted to "clarify[] the facts and message" in the talking points.  *Id.*  Contrary to Plaintiff's assertions, *see* Pl.'s MSJ Memo at 11–12, those descriptions of the withheld materials are "at least as detailed as those in *Machado Amadis*."  *Nat'l Immigr. Project of Nat'l Laws. Guild v. Immigr. & Customs Enf't*, 2020 WL 5798429 at *5 (D.D.C. Sept. 29, 2020) (citing 971 F.3d at 370-71).

The declaration also situates the exchange of that information within the FBI's process for deciding the talking points' content and framing.  A variety of employees "drafted, analyzed, reviewed, and evaluated each draft, providing recommendations and opinions," and "interacting with the highest levels of FBI leadership, executives who are responsible for much of the decision-making and creation of policy within the FBI."  Second Seidel Decl. ¶ 9.  The declaration explains that the iterative process of drafting the talking points required the participants to "provide unrestrained feedback, speculate if necessary, and ask questions regarding the accuracy of certain facts while anticipating potential criticisms."  *Id.* ¶ 10.  "This is true across the board but would be particularly damaging in any sensitive, controversial, or high-

---

> [1] the roles of the document drafters and their places in the chain of command . . . [2] the nature of the withheld content . . . [3] the stage within the broader deliberative process in which the material operates . . . and [4] the way in which the withheld material facilitated agency deliberation.

*Jud. Watch, Inc.*, 20 F.4th at 56.

profile case where the need for complete candor is critical." *Id.* ¶ 11. The "high[-]profile nature of the investigation at issue and the intense public scrutiny" of these particular talking points made "a willingness to ask tough questions and test assumptions" during the editing process especially important. *Id.* ¶¶ 10–11. In this respect, the declaration is "arguably *more particularized* than the . . . affidavit in *Machado Amadis*, as it emphasizes the unique threat posed by the disclosure of drafts pertaining to such a high-profile matter." *Jud. Watch*, 487 F. Supp. 3d at 47 (internal quotation omitted).

These details explain Defendant's conclusion—which it asserted in previous filings but with less support—that disclosure of the documents would impair its internal deliberative processes. The nature of the "raw editorial comments" at issue, in the context of an iterative drafting process for a high-profile matter, demonstrates that their disclosure

> could reasonably be expected to foster an environment where employees across the FBI would fear providing candid opinions, advice, and comments on preliminary drafts of documents that might similarly be made public and therefore would hesitate to commit such thoughts to writing or refrain from frankly discussing sensitive, difficult, or controversial FBI matters internally.

Second Seidel Decl. ¶ 11. In turn, "[t]his would deprive FBI decisionmakers, including executives at the highest levels, of the open and honest advice of FBI officials and employees necessary to make well-informed and considered decisions, ultimately harming the FBI and hampering it in performing its mission." *Id.* Thus, Defendant has shown that withholding the 47 draft pages is necessary to protect "the give-and-take of the consultative process" that produced those drafts, along with other similar processes at the FBI. *Machado Amadis*, 971 F.3d at 370.[4] That is sufficient for invoking FOIA's Exemption 5.

---

[4] Defendant also avers that no further segregation of the withheld records is possible: "The FBI has reviewed all 47 pages at issue and . . . determined there is no further non-exempt

Plaintiff's counterarguments are unpersuasive.  First, it contends that "disclosure of the drafts and comments does no harm to the analysis and accuracy of the final talking points, which have already been finalized and released."  Pl.'s MSJ Memo at 13.  Although that statement is true, it misses the point—which is that disclosure of the records from this drafting process could chill frank discussion in similar future situations.  Second, Plaintiff seizes on Defendant's statement that the chilling effect is "highly likely," arguing that "highly likely is not reasonably foreseeable" and is "too speculative" to meet the FIA's standard.  *Id.*  But Plaintiff cites no authority for that proposition, and the court disagrees with it.  Defendant concluded the chilling effect was highly likely because it had *reasons* to *foresee* that outcome, which it has now detailed with sufficient clarity to justify withholding the records at issue.  Finally, in a series of rhetorical questions, Plaintiff appears to contend that Defendant's "supporting declarations provide no actual link or meaningful connection between disclosure of the withheld material here and the leap to hindering frank and open dialogue."  *Id.*  For the reasons explained above, however, Defendant has in fact now demonstrated the requisite connections between disclosure and harm.

The court also rejects Plaintiff's request for *in camera* review of the withheld documents.  *In camera* review is a discretionary tool.  *Juarez v. U.S. Dep't of Just.*, 518 F.3d 54, 59–60 (D.C. Cir. 2008).  As Plaintiff notes, it may be appropriate "where exemptions are not sufficiently proven, or where other good cause may exist to order release of information under FOIA."  Pl.'s MSJ Memo at 14 (citing *Juarez*, 518 F.3d at 59–60; *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir.

---

information that can be reasonably segregated and released from the pages challenged by Plaintiff without revealing information that is exempt under FOIA Exemption (b)(5)."  Second Seidel Decl. ¶ 12.  The court accepts that representation.

1980)).  Here, however, Defendant has met its burden for invoking Exemption 5, and the court need not conduct additional review.

## IV. CONCLUSION

For these reasons, the court will GRANT Defendant's Motion for Summary Judgment, ECF No. 45, and DENY Plaintiff's Cross-Motion for Summary Judgment, ECF No. 51.  A corresponding Order will accompany this Memorandum Opinion.

Date: April 24, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge